IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) **UNDER SEAL** |
| v. | ) Case No. 1: 19mj121 |
| | ) |
| YOUNES S. DARRAJ | ) |
| | ) |
| Defendant. | ) |

MAR -8 2019

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Bryce Oleski, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant under Rule 4 of the Federal Rules of Criminal Procedure.

2. I am a Special Agent of the Federal Bureau of Investigation (FBI), duly appointed and acting in that capacity since 2017. I am currently assigned to a financial crimes squad at the Washington Field Office of the FBI, where I have participated in investigations of bank fraud and other criminal activities, which involve violations of Title 18, United States Code, Sections 1341 (Mail Fraud), 1343 (Wire Fraud), 1344 (Bank Fraud) and 1359 (Conspiracy to Commit Mail, Wire, and Bank Fraud).

3. I have knowledge of the matters described in this affidavit through my personal participation in the investigation, as well as from information provided to me by other FBI agents and lay witnesses. I have interviewed witnesses with knowledge of the events described herein and reviewed documents including bank records and records from automobile dealerships. In

this affidavit, I sometimes use the term "bank" as a general term for a financial institution, including credit unions. Where the statements of others are related herein, those statements are related in substance and not verbatim. Because I am submitting this affidavit only for the purpose of establishing probable cause for a criminal complaint, it does not include all the facts known to me as a result of the investigation.

4. I am submitting this affidavit in support of a criminal complaint charging YOUNES S. DARRAJ ("DARRAJ") with knowingly executing, or attempting to execute, a scheme or artifice to defraud a financial institution or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution by means of false or fraudulent pretenses, representations, or promises, in violation of Title 18, United States Code, Section 1344 (Bank Fraud).

## 5. BACKGROUND

6. In August 2017, an investigator from Wells Fargo Bank provided information to the FBI alleging that YOUNES S. DARRAJ had deposited two checks totaling $807,000 into a Wells Fargo checking account, opened on January 25, 2017, held in the name of Northern Valley Motors, LLC ("NVM"). These checks were later returned for non-sufficient-funds in the accounts from which the checks were written, causing a loss to Wells Fargo Bank. Upon initiating my investigation, I found similar activity being committed by DARRAJ at multiple financial institutions located in the Eastern District of Virginia during the same time period, including at PNC Bank, NA, ("PNC BANK"), a federally insured financial institution.[1]

7. My investigation revealed that DARRAJ is a 38-year-old male who resides in the Eastern District of Virginia. Based on observations from FBI physical surveillance and

---

[1] Based on my review of data obtained from BankFind link on the FDIC website, I know that PNC Bank is insured by the Federal Deposit Insurance Corporation, certificate number 6384.

2

commercial database checks, DARRAJ does not appear to have a permanent residence but, instead, lives part-time at the homes of other family members in and around Ashburn and Herndon, Virginia. DARRAJ listed an address on his Virginia's driver's license on Trossack Road in Herndon, Virginia, as well as on some of his bank accounts, applications to purchase vehicles, car titles and on his Chapter 7 bankruptcy filing. During a consensual interview, a family member confirmed that DARRAJ currently resides at the Trossack Road address with his mother and brother.

8. On or about September 19, 2016, DARRAJ electronically registered Northern Valley Motors ("NVM") as a limited liability company with the Virginia State Corporation Commission. DARRAJ listed the principal office as 28814 Old Valley Pike, Strasburg, Virginia ("the Valley Pike address").

9. On April 18, 2017, DARRAJ electronically registered another business known as Valley Pike Auto Repair, LLC ("VPAR") with the Virginia State Corporation Commission. DARRAJ also listed the principal place of business for VPAR as the Valley Pike address.

10. Based on interviews of the property owner and security staff at Valley Pike, whom I believe are reliable and credible, DARRAJ rented a large, open warehouse space at Valley Pike beginning December 1, 2016, for $1,100 per month. The landlord explained that DARRAJ said he would be using the warehouse to store vehicles that he purchased in order to keep them out of the elements. However, according to the landlord and his security staff who work on the premises, the leased space was not equipped for an auto repair business. The security staff and the landlord confirmed that DARRAJ did not operate an auto repair business on site. In fact, my review of the lease agreement for the space states that the proposed use of the premises is "Office for Auto Sales" and there is a statement in bold lettering stating that the

lease "is for an office for used car sale only." During my interview with the landlord, he indicated that DARRAJ paid the monthly lease at least once with a check which was returned for insufficient funds.

11. Over the course of this investigation, I have identified approximately forty-nine accounts at eleven financial institutions related to DARRAJ and two auto businesses he incorporated in Virginia. DARRAJ is the authorized signatory for all of these accounts, which are held in the name of DARRAJ or Northern Valley Motors (NVM) or Valley Pike Auto Repair (VPAR).

12. My review of wage and earnings records from Maryland Department of Labor, Licensing and Regulation and the Virginia Employment Commission reveals that, beginning in the second quarter of 2017 and continuing through the summer of 2017, DARRAJ did not have any wages or reported earnings. I also reviewed bank statements from Navy Federal Credit Union (account ending in #1047) and noted that DARRAJ appeared to have been employed at a business called "Protection One" from January 2016 through March of 2017. Records reveal that DARRAJ had his paycheck from "Protection One" deposited directly into this account. However, consistent with the wage records I reviewed, these payroll deposits into DARRAJ's Navy Federal account #1047 ceased in the second quarter of 2017.

13. I also discovered that DARRAJ filed a voluntary petition in bankruptcy in the Eastern District of Virginia on July 6, 2018 (Case No. 18-12360-BFK, Doc. #1). In the bankruptcy petition, which DARRAJ signed under penalty of perjury, DARRAJ claimed that he has not used any business name or EIN in the past 8 years and that Northern Valley Motors LLC was a defunct business and that "no business or property" was "conducted under this entity".

Further, DARRAJ did not disclose the existence of or his connection to Valley Pike Auto Repair on his bankruptcy petition.

14. On or about May 3, 2017, DARRAJ opened a business checking and a savings account for Valley Pike Auto Repair at Navy Federal Credit Union. In the application, DARRAJ claimed that he owned an auto repair and service center known as Valley Pike and that he had four employees. This representation is in direct contradiction to the information provided by the landlord for the Valley Pike address, the security staff at Valley Pike, the lease agreement for Valley Pike, and the agent's observations of the property. DARRAJ listed the Trossack Road address in Herndon, Virginia as the mailing address for the Valley Pike Auto Repair business. DARRAJ also stated his estimated monthly transaction amount was $9,000 I cash and $70,000 in checks. Based on the foregoing, as well as DARRAJ's failure to list VPAR in his bankruptcy petition, I do not believe that VPAR was a viable, on-going business concern and that DARRAJ's statements on his credit union application about VPAR were intentionally false.

## DESCRIPTION OF SCHEME TO DEFRAUD

15. To date, the investigation has revealed that DARRAJ knowingly and intentionally used his multiple business bank accounts to engage in a scheme to defraud several federally insured financial institutions, including PNC Bank, specifically by engaging in "check kiting." DARRAJ used the proceeds from the "check kiting" scheme to pay off loans he had taken out previously for the purchase of multiple luxury vehicles that he otherwise could not afford.

16. "Check kiting," as used in this affidavit, is a term commonly used in the banking industry to describe a scheme to defraud in which someone knowingly deposits checks written from an account at an issuing bank ("bank of issue") into an account at a second bank ("bank of deposit"), and the subsequent attempt to rapidly withdraw any funds that the bank of deposit

makes available. Based on my training and experience and facts learned during this investigations, as well as my discussions with other experienced agents and analysts, I know that banks typically have a timeframe known as "the float." The float is the time between a check being deposited at the bank of deposit and the same check being presented for payment at the bank of issue. During "the float," the bank of deposit will sometimes make a portion of the deposit available to the customer prior to payment of the funds by the bank of issue. In a check kiting scheme, withdrawals of funds are attempted during "the float," but before the bank of deposit becomes aware that the bank of issue will not honor the check because of insufficient funds.

## PROBABLE CAUSE

17. On or about September 30, 2016, DARRAJ opened up two bank accounts at PNC Bank in the name of Northern Valley Motors, including a business checking account ending in x5484 ("PNC Account") for which he was the sole signatory. Initially, DARRAJ listed the address for this NVM account at PNC as Trossack Road in Herndon, Virginia, and then later changed it to the Valley Pike address.

18. From the opening of the PNC Account in September 2016 through June 2017, there were only nine transactions during this nine-month period. None of the individual transactions exceeded $5,000 and they consisted primarily of online credit card payments, $50 monthly Corporate Account Analysis Charges from PNC Bank and a deposit of a $4,000 check drawn upon another Northern Valley Motors bank account at Wells Fargo. Through July of 2017, the monthly balance on the PNC Account varied between approximately $100 and $5,722, which is broken down as follows:

| Month | Total Inflows | Total Outflows | Ending Balance |
|---|---|---|---|
| October 2016 | $1,500 | $0 | $1,500 |
| November 2016 | $800 | $2,200 | $100 |
| December 2016 | $0 | $0 | $100 |
| January 2017 | $3,000 | $549 | $2,551 |
| February 2017 | $0 | $430 | $2,121 |
| March 2017 | $0 | $299 | $1,822 |
| April 2017 | $0 | $50 | $1,772 |
| May 2017 | $4,000 | $50 | $5,722 |
| June 2017 | $0 | $50 | $5,672 |

19. This pattern changed dramatically in July 2017 with the ATM deposit of two very large checks totaling approximately $1,171,000 over the course of two consecutive days at the end of the month. Both of these checks were signed by DARRAJ and made payable to Northern Valley Motors. The first check was for $561,000 from the Valley Pike Auto Repair account at Navy Federal (check #1007).

20. DARRAJ had opened the Navy Fed VPAR Account in May 2017 and was the sole signatory. From my review of bank records provided by Navy Federal Credit Union, this account did not contain anywhere close to $561,000 at the time the check was deposited into the PNC Account on July 26, 2017. In fact, during the two month period from the opening of the account to when DARRAJ presented the $561,000 check (#1007), the Navy Fed VPAR Account contained only a small fraction of that amount, as summarized in the chart below, and did not have any history of such large transactions:

| Month | Total Inflows | Total Outflows | Ending Balance |
|---|---|---|---|
| May 2017 | $4,000.15 | $100 | $3,900.15 |
| June 2017 | $0.16 | $500 | $3,400.31 |

Navy Federal Credit Union later returned Check # 1007 for non-sufficient funds on July 31, 2017.

21.     On or about July 27, 2017, and one day after DARRAJ deposited the $561,000 check (#1007) to NVM into the PNC Account, he deposited another large check to NVM into the PNC Account in Ashburn, Virginia, also via an ATM. This second check, signed by DARRAJ, was for $610,000 (check #1005) and was written from a NVM account (number ending in x0805) at First Bank in Strasburg, Virginia, for which DARRAJ was the sole authorized signatory.

22.     From my review of bank records provided by First Bank, DARRAJ also opened the NVM First Bank account in May 2017, the same month he opened the Navy Federal VPAR account. DARRAJ made an initial deposit of $500 into the First Bank account and there was only one transaction, an ATM withdrawal of $480, leaving a $20 balance, before DARRAJ deposited or caused the $610,000 check to be deposited into the PNC Account. Check #1005 was also returned by First Bank for non-sufficient funds on August 1, 2017.

23.     On or about July 7, 2017, DARRAJ purchased a 2017 Nissan GT-R sports car ("Nissan GT-R") for approximately $104,000 at a dealership in Waldorf, Maryland. My review of records revealed that DARRAJ financed and registered this sports car solely in his name. The records also revealed that DARRAJ financed the car purchase through a loan at Fifth Third Bank, arranged for by the automotive dealership. In the application to purchase the Nissan GT-

8

R, DARRAJ stated that he had monthly earnings of $16,300 from working in the alarm industry. However, based on my review of the bank and wage information, DARRAJ's employment in the alarm industry had ceased approximately three monthly earlier – that is, not later than April 2017. These records also revealed that during 2016, his last full year of employment in the alarm industry, DARRAJ had only earned a total of $39,458.00, or about $3,288 per month. This was much less than the $16,300 in income that DARRAJ claimed in order to qualify for this luxury automobile loan. Based on the foregoing, I believe that DARRAJ knowingly and intentionally inflated the amount of his monthly income and falsely stated that he was employed in the alarm business in order to qualify for the Nissan GT-R loan.

24. Based on the dates shown above, I believe that "the float" period for these checks to clear was about July 27, 2017, to not earlier than July 31, 2017. On July 27, 2017, and July 28, 2017, DARRAJ made or attempted to make over $425,000 of Automated Clearing House ("ACH"[2]) payments from the PNC Account. Among the withdrawals were two ACH electronic payments of $50,000 each made to Fifth Third Bank to pay off the loan balance for the Nissan GT-R in full and receive a clear title to the vehicle. After disbursing these funds by ACH payments, PNC determined that the two checks DARRAJ deposited into the PNC Account were not honored by the banks of issue. However, PNC Bank was not able to recover any funds from Fifth Third Bank causing a loss to PNC Bank.

25. In September 2017, PNC Bank closed the bank accounts for NVM due to the activity detailed in the previous paragraphs, therefore limiting DARRAJ's access to the banking system.

---

[2] ACH is a U.S. financial network used for electronic payments and money transfers. Also known as "direct payments," ACH payments are a way to transfer money from one bank account to another without using paper checks, credit card networks, wire transfers or cash. https://squareup.com/guides/ach-payments.

26. In October 2017, DARRAJ sold the Nissan GT-R to CarMax for $79,000. A review of the CarMax records revealed that DARRAJ received a bank draft, negotiable only at a financial institution, which he endorsed as payable to M. DARRAJ. Based on records obtained during this investigation, I believe that M. DARRAJ is a relative of DARRAJ. I have not found any evidence that either DARRAJ or M. DARRAJ used any of the funds from the sale of the Nissan GT-R, or any other funds, to attempt to reimburse PNC Bank for the losses it sustained by DARRAJ's withdrawal of funds during "the float" period.

## RELATED CONDUCT

27. As stated above, I have also identified a similar pattern of "check kiting" conduct by DARRAJ at multiple financial institutions other than PNC Bank. For a two month period, starting in July 2017 and continuing through August 2017, DARRAJ wrote over $10,015,400 of checks from ten accounts, at seven different financial institutions, for which he was the sole signatory, and deposited them at other banks into accounts for which he was the sole signatory. As the sole owner and signatory of each of these accounts, I believe that DARRAJ was aware of the approximate balance in each account at the time the checks he deposited or caused the checks to be deposited. Records also revealed that DARRAJ subsequently withdrew and attempted to withdraw over $1,300,000 during "the float" time of the banks of deposit, causing approximately $630,000 in losses to these financial institutions. I did not find any evidence that after the banks of deposit determined that DARRAJ'S checks were not honored by the bank of issue, that DARRAJ attempted to return any of the money he withdrew, or attempted to deposit any other funds to cover his overdrafts. In fact, I found evidence that DARRAJ used the money for his personal benefit, namely the payoff of loans for previously-purchased vehicles, outlined in the following paragraphs.

28.     On or about July 5, 2017, DARRAJ financed the purchase of a 2017 Lexus LX570 for $99,473 through Bank of America, as well as a 2017 Lexus LX570 for $99,820 financed through Toyota Motor Credit.

29.     DARRAJ purchased two additional luxury cars on July 7, 2017, in Manassas, Virginia: a 2017 Jeep Wrangler financed through JP Morgan Chase for $48,481 and a 2017 Jeep Cherokee SRT8 financed through TD Bank for $70,844

30.     The following day, DARRAJ purchased a 2017 Land Rover in Chantilly, Virginia, which he financed through US Bank for $124,147.00, and on July 11, 2017, DARRAJ purchased a third 2017 Lexus LX570 in Rockville, Maryland for $106,794.00 through Toyota Motor Credit.

31.     Similar to the purchase of the Nissan GT-R on July 7, 2017, on the application to finance or purchase these luxury cars, DARRAJ falsely stated that his income was between $16,300 and $21,000 per month from self-employment and from a full-time job in the alarm industry. As set forth above, records reveal that in July 2017, DARRAJ was no longer working in the alarm industry nor do the bank statements not reveal the deposit of any income in the range of $16,300 to $21,000 per month. Based on my training and experience, and review of records, I believe that DARRAJ intentionally made false statements about the nature and amount of his employment in order to qualify for the loans.

32.     Just like with the Nissan GT-R loan payoff, the financial records show that DARRAJ attempted to pay off the loans for the other luxury vehicles he purchased in July of 2017. Records reveal that after depositing large checks from other accounts he controlled during "the float" period, DARRAJ used ACH transfers from the bank accounts where he had deposited

the checks to pay off the loans. These large checks were later returned for non-sufficient-funds by the bank of issue resulting in a loss to the receiving banks in the amount of about $630,000.

33. Through the fraudulent ACH transfers during the "float" period, DARRAJ was able to pay off the car loans for one of the 2017 Lexus LX570, the 2017 Jeep Wrangler and the 2017 Land Rover he had purchased in July 2017. Shortly after paying off these loans, and receiving clear title for vehicles, DARRAJ sold these vehicles to CarMax, on three different dates from August of 2017 through October 2017. DARRAJ received $203,000, in the form of bank drafts, from CarMax based on the sale of these vehicles.

## CONCLUSION

34. Based on my training and experience, and the information provided in this affidavit, I respectfully submit there is probable cause to believe that no later than September 30, 2016, and continuing through not earlier than October 2017, in the Eastern District of Virginia and elsewhere, defendant YOUNES S. DARRAJ, did knowingly and willfully execute a scheme to defraud PNC Bank, NA, a federally-insured financial institution, by intentionally depositing worthless checks from businesses bank accounts under his control and by withdrawing funds thereon, in violation of 18 U.S.C. § 1344.

Bryce Oleski
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this _____ day of March, 2019

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

Honorable Theresa C. Buchanan
United States Magistrate Judge

12